UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| ROBIN KEARNS, | Civil No. 05-705 (PJS/JJG) |
| Plaintiff, | |
| v. | MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| JEFFERSON SMURFIT CORPORATION, | |
| Defendant. | |

---

Howard P. Helgen, HELGEN & HELGEN, 299 Coon Rapids Boulevard, Suite 100, Minneapolis, MN 55433, for plaintiff.

Alyson M. Palmer, Anthony Gabor, Donald Chance Mark, Jr., FAFINSKI MARK & JOHNSON, PA, 775 Prairie Center Drive, Suite 400, Eden Prairie, MN 55344, for defendant.

Plaintiff Robin Kearns filed this action against Jefferson Smurfit Corporation, seeking damages arising out of an incident that occurred on the morning of March 13, 2003. The facts are largely undisputed: On that morning, Kearns went to the Smurfit plant in St. Paul, hooked up his truck to a trailer parked at a loading dock, pulled the truck and trailer ahead a few feet, walked to the back of the trailer, and, while he was swinging the rear doors of the trailer shut, got hit on the head with a chunk of ice. What *is* disputed is the source of that ice. Kearns alleges that it came from an awning that covered the loading dock. Smurfit alleges that it came from the top of the trailer. Smurfit has now moved for summary judgment on this issue.[1]

---

[1] At oral argument, Kearns suggested for the first time that Smurfit could be liable even if the ice came from the trailer. Evidence in the record indicates that the trailer belonged to Kearns's employer, Cedar Cartage. Gabor Aff. Ex. 4 at 6. Kearns's entire theory of liability up to this point has relied on his contention that the ice came from the awning, and nowhere in his brief does Kearns explain how Smurfit could be liable for ice on Cedar Cartage's trailer.

Smurfit is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A dispute over a fact is "genuine" only if "the evidence is such that a reasonable jury could . . . return a verdict for [the non-movant]." *Baucom v. Holiday Cos.*, 428 F.3d 764, 766 (8th Cir. 2005). In considering a motion for summary judgment, a court must resolve factual disputes in favor of the nonmoving party. *Lomar Wholesale Grocery, Inc. v. Dieter's Gourmet Foods, Inc.*, 824 F.2d 582, 585 (8th Cir. 1987).

The question, then, is whether, based on the record before the Court, a reasonable jury could find by a preponderance of the evidence that the ice that struck Kearns came from the awning rather than from the trailer. The only eyewitness to the incident was Kearns himself. Kearns gave at least three statements about the incident within one month after the incident occurred:

First, on the morning of the incident, Kearns told the staff at Regions Hospital that he had been injured by ice that fell off the trailer. He said nothing about ice falling off the awning. Gabor Aff. Ex. 2.

Second, two weeks after the incident, Kearns was examined by Dr. Masood R. Ghazali of Neurologic Consultants, P.A. Kearns told Dr. Ghazali that he had been injured by ice that fell off the trailer. Again, he said nothing about ice falling off the awning. *Id*. Ex. 3 at 1.

Finally, one month after the incident, Kearns gave a detailed statement to his workers' compensation carrier. Kearns told the carrier that he had been injured by ice that fell "[f]rom the trailer" — ice that "must have [been] pulled . . . over and down" when Kearns "moved the door."

*Id*. Ex. 4 at 8.  After then saying that he was "not sure" from where the ice came, Kearns again said that the ice "came from the top of the trailer, I imagine." *Id*.

Today, Kearns says that he simply does not know whether the ice came from the awning or the trailer.  At his May 11, 2006 deposition — a deposition taken more than three years after the incident — Kearns was asked, with respect to the ice that hit him: "[D]id you see where it came from?"  And his answer was: "No."  Kearns Dep. 71.

Kearns has thus given conflicting accounts, first asserting that the ice came from the trailer, and then later asserting that he does not know whence the ice came.  But, to survive summary judgment, Kearns must do more than this; he must provide affirmative evidence that the ice came from the awning.  His own testimony provides no such evidence.

The only such evidence that Kearns has supplied is the affidavit of his brother, Jeffrey. *See* Helgen Aff. Ex. 4.  After Kearns was hit by the ice, he drove his truck and trailer to a warehouse a few miles away.  Jeffrey was working at that warehouse.  After Kearns arrived, Jeffrey talked with him and then asked a coworker to take him to the hospital.  Soon thereafter, Jeffrey drove Kearns's truck back to the Smurfit plant and examined the site of Kearns's accident.  Jeffrey's affidavit states the following:

> While walking toward the docks, I noticed several chunks of ice on the ground. There was blood on some of the pieces and on the ground.  I looked up at the awning above where the ice pieces were located.  I could definitely see that the pieces of ice had fallen off the awning because when I looked at the awning there was an area where the ice had been before it fell to the ground.  The awning was clear of ice in this area.

*Id*.

For purposes of deciding this motion, this Court must, of course, assume that what Jeffrey asserts is true.  Jeffrey's testimony does indeed tend to show that Kearns was injured by

-3-

ice that fell from the awning.  The question remains, though, whether, based on *all* of the evidence in the record, a reasonable jury could find that it is more likely than not that Kearns was injured by a chunk of ice that fell from the awning.

The best evidence on that issue are the statements of the one and only eyewitness — Kearns himself — made to the personnel at Regions Hospital immediately after the incident and to Dr. Ghazali two weeks later.  These statements were made while the incident was fresh in Kearns's mind and before Kearns's memory could be influenced by litigation considerations.  In those statements, Kearns asserted that the ice fell from the trailer.[2]

In contrast, Jeffrey's affidavit was signed almost three and one half years after the incident, and, more importantly, Jeffrey was not an eyewitness.  He did not reach the scene of the incident until some time after the incident occurred — perhaps an hour or more after the incident.  He saw ice on the ground, and he saw a clear area on the awning, but he could not know whether the ice on the ground fell off the awning, the trailer, or both.  Moreover, even if some of the ice came from the awning, he could not know *when* that ice fell.  Kearns testified that it was a "fairly warm" day with temperatures "possibly" in the "30s."  Kearns Dep. 68.  The ice could have fallen at any time — before, during, or after the incident — or various chunks of ice could have fallen at various times.

In sum, the record contains direct evidence — specifically, three statements made within a month of the incident by Kearns, the only eyewitness to the incident — that the ice that injured Kearns fell off the trailer.  The record contains only indirect and speculative evidence — one

---

[2]Kearns also told Dr. Ghazali that he "was aware that an accident was about to happen and tried evading maneuvers," Gabor Aff. Ex. 3 at 1, which suggests that Kearns based his initial statements regarding the source of the ice on more than mere speculation.

affidavit filed three and one half years after the incident by Kearns's brother, who did not witness the incident — that the ice that injured Kearns fell off the awning.

As Smurfit has argued, this indirect evidence is weaker than that which the Minnesota Supreme Court found insufficient to defeat summary judgment in *Wallin v. Rappaport*, 543 N.W.2d 91 (Minn. 1996). In that slip-and-fall case, the Court of Appeals found a factual issue based on testimony that the parking lot where the accident occurred was "mostly . . . sheer ice," numerous references to ice near where the plaintiff fell, and the plaintiff's testimony that she "believe[d] it was icy" where she was standing, although she also testified that she wasn't sure. *Wallin v. Rappaport*, 539 N.W.2d 4, 6-7 (Minn. Ct. App. 1995). The Minnesota Supreme Court reversed, explaining that "[t]he record discloses no direct evidence that the alleged accumulation of ice on the parking lot . . . was the cause of the plaintiff's injuries, particularly where the plaintiff could not definitively recall whether the lot surface was icy near [where she fell]." *Wallin*, 543 N.W.2d at 91.

Although the question is a close one, the Court concludes that, as in *Wallin*, a reasonable jury could not find, by a preponderance of the evidence and on the basis of the entire record, that the chunk of ice that injured Kearns fell from the awning. The Court recognizes that, as a general matter, whether the defendant's conduct caused the plaintiff's injury is a question of fact for the jury. In this case, however, "reasonable minds can arrive at only one conclusion," making the issue of proximate cause "a question of law." *Lubbers v. Anderson*, 539 N.W.2d 398, 402 (Minn. 1995). For that reason, Smurfit is entitled to summary judgment.

ORDER

Based on the foregoing and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

1. Defendant's motion for summary judgment [Docket No. 8] is GRANTED; and

2. Plaintiff's complaint [Docket No. 1-2] is DISMISSED WITH PREJUDICE AND ON THE MERITS.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: October 17, 2006                  s/Patrick J. Schiltz
                                                   Patrick J. Schiltz
                                                   United States District Judge